COLLEGE CLUB DAIRY, INC. *v.* AMES.

5-1477                                                        311 S. W. 2d 532

Opinion delivered March 10, 1958.

[Rehearing denied April 21, 1958]

*Ulys. A. Lovell, James Evans, Rex W. Perkins* and *E. J. Ball,* for appellant.

*W. B. Putman,* for appellee.

J. SEABORN HOLT, Associate Justice. On March 19, 1955, this suit was filed by appellant, College Club Dairy, Inc., against B. G. and Peggy Ames, a partnership doing business as Medosweet Dairy, to foreclose a real estate mortgage, and a chattel mortgage on certain auto trucks, as security for a past due note in the amount of $16,193.35, alleging that there was due appellant $12,293.35 on the note, $8,182.74 for milk furnished, and $2,100.00 on an unpaid check. It was further alleged that appellees were insolvent, prayed for a receiver to take charge of the assets and preserve the going business. Following a hearing the trial court on March 22, 1955, appointed Lewis Legg receiver who, after qualifying and making a $20,000 bond, procured an order from the court directing him as receiver to purchase milk from College Club Dairy and pay for same out of gross operating income. Complying with this order

Legg bought milk from appellant until October 8, 1955, when appellant refused to continue selling milk to the receiver until the receiver had paid appellant $6,457.76 which it was alleged the receiver was behind in his payments to appellant for milk. Following this action of the College Club Dairy, the receiver, with the court's permission, began purchasing milk from the Hiland Dairy in Missouri, for cash on delivery. Expenditures for Hiland milk from October 10, 1955 to November 22, 1955, totaled $11,010.24. On February 13, 1956, the court ordered and directed the receiver "to file his final accounting herein as of the close of business on January 31, 1956 and that he deliver all assets in his hands as such receiver to the defendant, B. G. Ames, as of the beginning of business on February 1, 1956." The court retained jurisdiction. After considerable delay and following a contempt citation the receiver, as directed, did on November 15, 1956, file an accounting. It appears that the receiver had, in compliance with the order of the court of February 13, 1956, and several months prior to filing his account, delivered the assets in his hands to the appellees.

The receiver's accounting is briefly summarized by the appellant as follows: "The receiver's accounting, filed with the receiver's report, shows cash, accounts receivable, machinery and equipment of $17,725.68; and received over the accounting period of $79,254.13, making a total of $96,979.81. Expenditures for salaries, help, milk, truck expense, repairs, taxes, office s u p p l i e s, maintenance, insurance, utilities, and hospitalization for Bill G. Ames, $73,706.17. Payments on obligations existing prior to March 22, 1955, trade accounts, notes and interest, plus an assignment to the First National Bank in Springdale, Arkansas—$10,202.83; Assets on hand at the close of Receivership: Cash: $307.90; Accounts Receivable: $3,652.91, and machinery and equipment: $9,-110.00, making a total of $13,070.81. The liabilities prepared from records without audits showed $28,498.83, and the accounts payable by the receiver totaled $6,-945.13, of which $6,228.41 was due College Club Dairy,

Inc., by the receiver for milk purchased by the receiver from the College Club Dairy, Inc.'' And, in an amended report . . . ''that, at the time of termination of receivership (final accounting), there was on hand milk, cream, butter and dairy products of the value of approximately $800.00; asking that the original report be amended to show this amount and to credit the receiver therefor.'' Exceptions were filed to this report generally as to the manner of expenditures and as to the purpose for which expenditures were made by the receiver. The trial court sustained an exception to the item of $124.00 expended by the receiver on a group insurance policy for Ames, but refused to charge the receiver with the milk bill item to College Club which the court found to be $6,228.00, but further held that ''all other objections filed to the receiver's account should be dismissed and overruled.''

On this appeal, appellant relies on the following three points: ''1. The appellant alleged sufficient facts in its complaint to constitute a cause of action . . . 2. Appointment of a receiver in a chattel mortgage and real estate mortgage foreclosure is legal and proper . . . 3. A creditor furnishing goods and supplies to a receiver pursuant to the order of the court is entitled to a priority as to the funds received from the sale of such goods and supplies. The trial court erred in holding to the contrary.''

It appears from the briefs before us and the oral argument that the only issue for our determination is appellant's contention in his third point above, that as a creditor furnishing goods and supplies to a receiver pursuant to the order of the court, appellant is entitled to a priority as to the funds received from the sale of such goods and supplies, amounting to $6,228.00.

We find no evidence in the record of any fraud or culpable negligence on the part of the receiver in the discharge of his duties, such as would impose liability on him and his bondsmen. Clearly, we think the $6,228.00 claim with which appellant seeks to surcharge the receiver's account, is one that arose from the

sale by appellant of milk to the receiver for resale, in carrying on the receivership and was, therefore, properly classified as an operating expense, by the receiver, and was a claim payable from the assets in the hands of the receiver. It appears, however, at the time of the receiver's final accounting (February 4, 1956) that assets totaling $13,070.81 were in his hands, including $3,960.81 in cash and accounts receivable, and an additional $800.00 in inventory of dairy products. While it appears that on this date, February 4, 1956, liabilities exceeded the assets, but with the exception of the $6,228 College Club claim and small claims amounting to about $716.72, all other liabilities arose prior to the receivership, and College Dairy would have been justified only in claiming a preference over these pre-existing claims, and would not be entitled to a preferred status as to any claims that arose after, and during, the receivership — and the trial court correctly so held. "The general rule is that costs and expenses of a receivership, including compensation for the receiver, counsel fees, and obligations incurred by him in the discharge of his duties, constitute a first charge against the property or funds in receivership . . . this rule governs the payment of operating expenses of a receivership." 45 Am. Jur. Receivers, Sec. 275. Appellant, however, instead of asserting its claim against the assets that remained in the hands of the receiver, at the time of his accounting, stood by without objection and permitted all of these assets to be delivered to the appellees in accordance with the trial court's order. We do not mean to hold that appellant, College Club Dairy, does not have the right to collect this just debt of $6,228, but he cannot collect it from the receiver or his bondsmen.

The decree is affirmed.